

U.S. DISTRICT COURT – N.D. OF N.Y.
**FILED**
Jan 08 - 2024
John M. Domurad, Clerk

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF NEW YORK
PLATTSBURGH DIVISION

| | |
|---|---|
| **SCOTT PHILLIP LEWIS,** *Plaintiff*, | § § § |
| v. | §   **Jury Trial Demanded** |
| | §      8:24-cv-29 (TJM/DJS) |
| **Citizens United, Inc.** *Defendant.* | § § § § |

### PLAINTIFF'S ORIGINAL COMPLAINT

NOW COMES PLAINTIFF, Scott Phillip Lewis, and files Plaintiff's Original Complaint. Plaintiff files this Americans with Disabilities Act and Rehabilitation Act lawsuit for cause of action will show the following:

### I. PARTIES

1. Plaintiff is Scott Phillip Lewis ("Plaintiff"), an individual and citizen of the United States of America.

2. Defendant is Citizen Advocates, Inc. ("Defendant") is a not-for-profit 501(c)(3) organization located in Essex County, New York and can be served through its Director, Joe Riccio, at 324 Creighton Road, Malone, NY.  Service is requested contemporaneously with the filing of the complaint.

### II. VENUE AND JURISDICTION

3. The court has jurisdiction over this lawsuit according to 28 U.S.C **§** 1331.  The court has personal jurisdiction because the American with Disabilities Act of 1990 and Rehabilitation Act of 1973 are laws of the United States.

4. Venue is proper in the Plattsburgh Division of the United States District Court for the

Northern District of New York, under 28 U.S.C **§** 1391(b).  Citizen Advocates, Inc. is situated in this district and a substantial part of the events or omissions giving rise to claims in this lawsuit occurred within this judicial district.

### III. FACTUAL ALLEGATIONS

#### A. Plaintiff's Relevant Medical History

5. Plaintiff's relationship with chronic pain begins in 2012. At this time, Plaintiff had their left wrist severely broken, requiring a fixation with screws and plates used to piece the arm back together.  Surgery was performed at Upstate Orthopedics in East Syracuse, New York.  After surgery, Plaintiff was prescribed Oxycontin, a pain killer known for its high risk for addiction and dependence.  Oxycontin was originally advertised as not being addictive by distributors such as Purdue Pharmaceuticals located in Stamford, Connecticut.

6. The Johns Hopkins Medicine website explains "[w]hen pain becomes such a problem that it interferes with your life's work and normal activities, you may become the victim of a vicious circle. Pain may cause you to become preoccupied with the pain, depressed, and irritable. Depression and irritability often leads to insomnia and weariness, leading to more irritability, depression, and pain." https://www.hopkinsmedicine.org/health/conditions-and-diseases/chron ic-pain#:~:text=Pain%20may%20cause%20you%20to,suffering%2C%20sleeplessness%2C %20a nd%20sadness).

7. By 2013, Plaintiff had noticed changes in life's work and normal activities because of the constant chronic pain in the left wrist. By May 2014, Plaintiff made the choice to remain abstinent from alcoholic beverages as the chronic pain mixed with alcohol had become an unpleasant experience with irritable behavior becoming more frequent. Shortly after making

this choice, Plaintiff was hired as a Derivatives Trading Specialist at optionsXpress by Charles Schwab and JV Lacrosse Coach at Vandegrift High School in Austin, TX. Plaintiff moved from Syracuse, New York.

8. In November 2015, Plaintiff was involved in a hit and run accident on Rainey Street in Austin, Texas leaving Plaintiff with a concussion and traumatic brain injury (TBI). The police who were involved never followed up with Plaintiff, seemingly attempting to cover up what happened. Plaintiff is still working on obtaining a full police report and information from the officers involved at the November 2015 accident and cover up.

9. After the 2015 hit and run incident, Plaintiff experienced a progressive increase in attention-deficit/hyperactivity disorder ("ADHD") symptoms associated with the post-traumatic stress disorder ("PTSD") from the accident and lack of police professionalism, follow up and transparency.

10. After the progression of symptoms of PTSD and ADHD from the 2015 hit and run accident, Plaintiff had developed an alcohol abuse disorder over time. While some could see the alcohol abuse, the root cause of the symptom went undiagnosed for a very long time. Even though Plaintiff understood the symptoms he was experiencing, Plaintiff was bombarded with conflicting opinions by individuals who did not care about the full truth, but instead focused on selective facts that best fit a desired narrative and bias.

11. Again symptoms of PTSD and ADHD were further exacerbated on or around July 2018 when a former roommate and also a coach at Vandegrift Lacrosse Club told Plaintiff he had paid money to have a man killed over a disagreement in a lacrosse game. Stunned by such evil, Plaintiff experienced an even further increase in ADHD and PTSD symptoms and separately, an increase in alcohol abuse, which is a symptom of PTSD and ADHD.

12. Plaintiff made the choice to go to "A Forever Recovery," a rehabilitation facility in Battle Creek, Michigan. Plaintiff knew this was not a good fit, almost immediately, as the facility wanted to focus solely on the alcohol abuse and not the reasons that caused such a symptom. Plaintiff felt as if they were at a cult and made the decision to leave after approximately twelve (12) days. This experience affected Plaintiff's overall well-being. "A Forever Recovery" is now believed to be permanently closed.

13. As previously mentioned on January 25, 2019, Plaintiff was arrested for driving while intoxicated in Williamson County, TX and had his left shoulder broken within the Williamson County Jail.

14. The criminal charges associated with Plaintiff's driving while intoxicated arrest were dismissed for insufficient evidence on or around April 25, 2022. The civil lawsuit initiated by Plaintiff against Williamson County, Texas is an active case in the United States District Court for the Western District of Texas. The active litigation's case number in the Western District of Texas is 1:21-cv-00074.

### B. Plaintiff's Medical History with Citizens Advocates, Inc.

15. According to their website, "Citizen Advocates provides developmental disability, mental health and substance abuse prevention, treatment and recovery services throughout Franklin, Clinton, Essex, Hamilton and St. Lawrence counties" (https://citizenadvocates.net/about-us/).

16. On or around October 22, 2021, while receiving counseling through Better Help, an online therapy platform, Plaintiff sought an official diagnosis of symptoms of post traumatic stress disorder ("PTSD") and attention deficit/hyperactivity disorder ("ADHD") that had continued to progressively intensify and learn of options and resources available.

17. Plaintiff received an initial evaluation for intake online on or around October 22, 2021,

performed by Joanna Politi, LMHC.  The initial evaluation form is not signed (Exhibit A).

18. Even though a licensed medical health counselor is not licensed to make diagnosis', Plaintiff was nonetheless diagnosed by Joanna Politi for attention-deficit/hyperactivity disorder, and nothing else (Exhibit B).  Plaintiff's post-traumatic stress disorder symptoms remained.

19. Plaintiff was unaware that his mother was given ROI status on October 22, 2021 (Exhibit C). Joanna Politi states "verbal ROI" was given.  Plaintiff did not intend to give unrestricted access of his medical charts to his mother, Debbie Lewis, maiden name Stepien.

20. On or around October 26, 2021, Plaintiff had a second telehealth appointment with Joanna Politi.  The notes include a diagnosis of alcohol use disorder and/or alcohol dependency (Exhibit D).  This evaluation is also not signed.

21. Plaintiff was abstinent from alcohol for four (4) months, last having an alcoholic beverage on or around June 12, 2021.

22. In other words, Plaintiff was diagnosed by someone not licensed to make diagnosis' for alcohol use disorder and alcohol dependence even though they had not had alcohol in four (4) months.

23. Post-traumatic stress disorder or PTSD was completely ignored.

24. Plaintiff was unaware of the alcohol use disorder diagnosis at the time.

25. On or around January 10, 2022, Plaintiff had an initial psychiatric evaluation with John Gomez, NP.  His evaluation is unsigned (Exhibit E).

26. The evaluation form from January 10, 2022 shows a diagnosis and case formulation of ADHD and alcohol use disorder, even though Plaintiff had not had an alcoholic beverage in six (6) months now.  Again, the symptoms of PTSD were ignored completely (Exhibit F).

27. The evaluation curiously includes a note requiring nursing supervision, stating "Patient

requires nursing supervision to include; injections, Medication checks, and overall monitoring of symptoms related to their primary diagnosis. Frequency determined by nursing staff" (Exhibit G)  This is utterly erroneous.

28. The bizarre sequence of ignoring Plaintiff's PTSD symptoms and creating a diagnosis of alcohol use disorder, when Plaintiff wasn't using alcohol, culminated with a prescription of adderall for ADHD and aripiprazole, which was sold to Plaintiff as an anti-anxiety medication (Exhibit H).

29. Upon receiving the prescription, Plaintiff learned aripiprazole was a medicine used for autism and/or schizophrenia, and Plaintiff was misled about the use of aripiprazole by John Gomez. Plaintiff never took this medicine and confronted nurse practitioner in psychiatry John Gomez upon learning of the purpose of aripiprazole.

30. The practice of using misrepresentations to trick patients into taking prescriptions is designed to benefit only those prescribing the drugs.  The practice of ignoring the root causes of mental health symptoms and creating false diagnosis' in order to justify prescribing pills creates questions surrounding the motivation behind such behavior.

31. Plaintiff was prescribed pills for autism and/or schizophrenia but was told it was an anti-anxiety medicine.  Plaintiff was diagnosed with alcohol dependence even though he was abstinent from alcohol for four (4) months.  The symptoms of post-traumatic stress disorder remained ignored.

32. Plaintiff's trust was broken with the organization.  Plaintiff seeked alternative treatment providers.

33. Plaintiff was diagnosed with PTSD on or around May 3, 2023 (Exhibit I).

## IV. CLAIMS

### Claim I - Violation of Title III, Americans with Disabilities Act of 1990

34. Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein and alleges as follows.

35. "To state a claim under Title III [of the Americans with Disabilities Act ("ADA" or "the Act")], [a plaintiff] must allege (1) that he is disabled within the meaning of the ADA; (2) that defendants own, lease, or operate a place of public accommodation; and (3) that defendants discriminated against her by denying her a full and equal opportunity to enjoy the services defendants provide." *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008).

36. Title III of the Americans with Disabilities Act of 1990 ("ADA") prohibits discrimination on the basis of disability in the activities of places of public accommodations and is codified through 42 U.S.C § 12182(a) which states in full:

> "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

37. On or around February 2022, Citizen Advocate, Inc. received a $4,000,000 grant from the Department of Health and Human Services.

38. The Press-Republican reported that "[t]hrough the initiative, Citizen Advocates implemented a 24/7 Crisis and Recovery Center for the delivery of urgent care to treat mental health and addiction, and launched a broad range of care coordination programs in conjunction with other health care organizations, public safety and veterans groups" https://www.pressrepublican.com/news/local_news/citizen-advocates-awarded-4-million-grant/article_6364aa62-09be-575d-8fca-97ddf7148ad6.html.

39. ADHD and PTSD are disabilities under the ADA.

40. The act is designed to prevent practices such as those described here within and performed by Defendant.

41. Citizen Advocates, Inc. leases, owns or operates properties designed to provide healthcare as a place of public accommodation in Malone, New York.

42. Defendant attempted to trick Plaintiff into taking a prescription that did not fit any diagnosis. The sinister attempts to trick Plaintiff were performed because Plaintiff had a history of ADHD, PTSD and alcohol abuse.

43. Defendant believed they could take advantage of Plaintiff.

44. Plaintiff's symptoms of post-traumatic stress disorder intensified. Plaintiffs had the courage to confront reality and be transparent about what they were dealing with, but were then prescribed a pill for something they weren't diagnosed with.

45. Plaintiff felt abandoned and not listened to by Citizen Advocates, Inc., exacerbating symptoms of ADHD and PTSD.

46. Plaintiff had legitimate fears for his safety.

47. Plaintiff was denied full access to goods and services because of a disability. Instead, Plaintiff's disability was used to prescribe medicine which was unnecessary further injuring Plaintiff.

48. Plaintiff was denied full access to goods and services when he was diagnosed by someone who is not licensed to diagnose mental health conditions on October 25, 2021 by Joanna Politi. Defendant perceived that Plaintiff could be taken advantage of and that his disability would prevent the ability in taking any legal recourse.

49. Of course this assumption is flatly incorrect as 42 U.S.C § 12101(1) states:

> "[t]he Congress finds that physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination; others who have a record of a disability or are regarded as having a disability also have been subjected to discrimination."

50. By trying to take advantage of Plaintiff's disability to prescribe pills that are not necessary, Defendant violated the ADA.

51. One reason for violating the ADA would be financial benefits to Defendant, such as kickbacks, at the expense of Plaintiff's or other patients overall health and disability.

52. Aripiprazole is also known as Abilify.

53. Upon information and belief, the drug makers of Abilify or aripiprazole faulted by properly testing Abilify, aggrandized the benefits of Abilify, and encouraged physicians to use the medication for purposes not approved by the Food and Drug Administration..

54. Plaintiff was injured because of distress over an improper diagnosis and improper prescription.  Again, Plaintiff had symptoms of PTSD which were ignored, while Plaintiff was instead given a pill for nothing he was diagnosed with.  This distress further injured Plaintiff and was caused by Defendant's ADA violations.

55. As a result of Defendant's ADA violation, Plaintiff was angry and frustrated and experienced an increase in PTSD symptoms, including but not limited to paranoia, distrust of others, irritability, difficulty maintaining relationships, an inability to relax, the inability to care for oneself, inability to work consistently, inability to focus, and inability to learn.

56. Plaintiff suffered emotional distress and worsening symptoms of ADHD and PTSD due to Defendant's ADA violations.

57. Plaintiff requests all relief and damages he may be entitled.

### Claim II - Violation of Section 504 of the Rehabilitation Act

58. Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein and alleges as follows.

59. Upon information and belief, Citizen Advocates, Inc. received Federal financial assistance in 2022, in the amounts of $4,146,750.

60. Under Section 504 of the Rehabilitation Act, individuals with disabilities are defined as persons with a physical or mental impairment which substantially limits one or more major life activities. A recipient of Federal financial assistance may not, on the basis of disability, deny qualified individuals the opportunity to participate in or benefit from federally funded programs, services, or other benefits or deny access to programs, services, benefits or opportunities to participate as a result of physical barriers (https://www.hhs.gov/sites/default/files/ocr/civilrights/resources/factsheets/504.pdf).

61. ADHD and PTSD are disabilities that create mental impairments that substantially limit one or more life activities.

62. Plaintiff exhibited the inability to care for oneself, work consistently, perform manual tasks, focus and learn.

63. Plaintiff did not receive the benefits of the federally funded programs and services.

64. In fact, Plaintiff was diagnosed by someone who is not licensed to make a diagnosis.

65. Citizen Advocates, Inc. allowed access to aripiprazole, a prescription that was not necessary and instead rather dangerous to Plaintiff but denied Plaintiff access to the full array of benefits that were provided.

66. Plaintiff was denied access to programs because of their disability.

67. Defendant believed Plaintiff could be tricked into taking a prescription that was not necessary.

68. Plaintiff was denied access to programs, services, benefits or opportunities as a result of a discrimination due to disability.

69. By denying Plaintiff access to federally funded programs due to Plaintiff's disability, Defendant violated Section 504 of the Rehabilitation Act of 1973.

70. Defendant used Plaintiff's disability to make decisions that were financially beneficial to Defendant while denying the proper care and full benefits of Citizen Advocates, Inc. that Plaintiff seeked.

71. Plaintiff requests all relief and damages he may be entitled.

## V. DAMAGES

1. Plaintiff suffered and claims the following damages::

    I. Actual Damages

        - Past and future mental anguish
        - Past and future impairment
        - Past and future medical expenses
        - Past and future loss of earning capacity
        - Past and future physical suffering

## VI. JURY DEMAND

72. Plaintiff respectfully requests jury trial pursuant to FED. R. CIV. P. 48.

## VII. PRAYER FOR RELIEF

73. Accordingly, Plaintiff requests that judgment be awarded against Citizen Advocates, Inc. for:

(1) Compensatory damages;

(2) Punitive or exemplary damages;

(3) Costs of Court;

(4) Prejudgment and postjudgment interest at the highest rate allowable under law;

(5) Unliquidated damages at the highest amount that is within the jurisdictional limits of the court;

(6) And all over relief to which Plaintiff is justly entitled.

Respectfully submitted,
/s/Scott Phillip Lewis
Scott Phillip Lewis
1936 Saranac Ave. #3, PMB 411
Lake Placid, NY 12946
518-551-3061
scottphilliplewis@gmail.com
